No. 36,397

June H. Mayer, *Appellant* v. (Fred N. Probst, Defendant) W. B. Harrison, *Appellant*, The Advance Furnace Company, *Appellee* and *Cross-appellant*.

(166 P. 2d 674)

Opinion filed March 9, 1946.

*Payne H. Ratner* and *Donald C. Allen*, both of Wichita, were on the briefs for appellant June H. Mayer.

*Austin M. Cowan*, *W. A. Kahrs*, *Robert H. Nelson* and *Clarence N. Holeman*, all of Wichita, were on the briefs for appellant W. B. Harrison.

*Laurence S. Holmes*, of Wichita, argued the cause, and *George J. Hondros*, of Wichita, was on the briefs for appellee Advance Furnace Company.

The opinion of the court was delivered by

Thiele, J.: On September 22, 1944, The Advance Furnace Company, hereafter called the Furnace Company, filed its petition in the above entitled action to have the district court set aside its judgment of July 2, 1943, approving a receiver's sale of personal property. W. B. Harrison and June H. Mayer filed separate demurrers to the petition on the ground the petition failed to state facts sufficient to warrant any relief in favor of the Furnace Company and from adverse rulings each appealed to this court. The Furnace Company has also appealed from a ruling adverse to it, which will be mentioned later. An understanding of the matter requires a short statement of matters leading up to the judgment of which complaint is made.

June H. Mayer and Fred N. Probst were partners operating under the name of United Parts Manufacturing Company, hereafter called the United Parts, and engaged in making parts for airplanes under subcontracts with prime contractors. The partners could not agree and on February 1, 1943, Mayer sued Probst for dissolution of the

partnership and for the appointment of a receiver and on the same day Paul Hatfield was appointed receiver. Mrs. Mayer purchased the interest of Probst and issues between them were settled, but the court by order continued the proceedings for determination of the rights of creditors. On March 10, 1943, the court made an order fixing a time for filing of claims and claims were filed by the Furnace Company for $519.21, by the Union National Bank for $12,377.26, and by W. B. Harrison for $15,094.60, the latter claim being for money advanced for pay roll. On June 28, 1943, these claims were allowed. On June 23, 1943, the receiver filed a report showing that he had on hand cash in the amount of $5,099.06, and accounts, equipment and material all totaling $10,721.19, and that liabilities were receiver's notes amounting to $2,009.05 and receiver's certificates amounting to $8,000, and accounts payable amounting to $3,715.89, or a total of $13,724.94, leaving an apparent deficit for creditors of $3,003.75, and listing as contingent assets the value of which could not then be ascertained (a) shipments of material and parts in transit and (b) disputed claims against debtors. On June 28, 1943, the receiver filed an application to sell all of the assets, consisting of machinery, office furniture, materials on hand, accounts and notes receivable and assignments of unfulfilled contracts, and on the same day the trial court made an order that the property be sold on July 1, 1943, at the place of business, as a whole for cash and if the purchaser be anyone having a claim against the receiver that the claim be applied proportionately as a part of the consideration. The receiver was directed to give notice by one publication in the "Wichita Eagle" and the notice mailed to all creditors. On July 2, 1943, the receiver filed his verified report of sale showing that he sold all of the assets of United Parts and that the highest and best bid was $8,450 by D. A. Clem. On the same day the trial court heard the application of the receiver for confirmation of the sale and ordered that the sale to Clem for $8,450 of "all assets consisting of accounts and notes receivable, furniture, machinery, material and unfulfilled contracts, and all other physical assets and assets, claims and demands of United Parts Manufacturing Company and automobile, a 1939 Ford coupé, No. ——" be affirmed and approved and that Clem be allowed to apply accounts and notes receivable held by him against the receiver in lieu of cash, and further that the receiver from cash on hand and moneys received from the sale (the respective amounts of which are not stated) be authorized

and empowered to pay all obligations of the receivership and the costs of the action and taxes due. The record is silent as to what claims were paid or the amount thereof, or the costs, or the taxes, but we are told that nothing was paid on general claims. If any objection was made to any of the above proceedings, it is not disclosed by the abstract or counter abstract filed herein nor is there any showing of final disposition of the action.

As previously mentioned, on September 22, 1944, the Furnace Company filed its verified petition asking the trial court to set aside its order of July 2, 1943, approving the sale. For its cause of action it alleged (1) that it was a judgment creditor of the partners and that its judgment had never been paid although it had attempted to collect from Mayer inasmuch as Probst had been adjudicated a bankrupt; (2) that Mayer had charge of the books of United Parts and was conversant with the financial affairs of the partnership prior to the receivership and afterwards; (3) that plaintiff Mayer was the daughter of W. B. Harrison who advanced money to the receiver and was issued receiver's certificates, that at the time the action was commenced the partnership was working on a subcontract with the Curtiss-Wright Company, a prime contractor, that the United Parts continued to attempt to work on the subcontract after the receiver was appointed and that the funds used to operate the partnership were obtained by Harrison at various times in return for which he received receiver's certificates; (4) that the United Parts kept an adequate set of books to show the value of the work in progress on war contracts and that Mayer failed to advise the receiver of the fact that the accounting system used by the partnership would enable him to determine the approximate value of the work in progress and that Mayer fraudulently led the court and the receiver to believe that the value of the work in progress at the time the subcontract with the Curtiss-Wright Company was terminated could not be determined and that the value of the item was nonexistent; (5) that Mayer connived and conspired with Harrison to lull other creditors into a false sense of security as shown by two letters attached as exhibits which are more fully mentioned later and that the Furnace Company was led to believe that Harrison was going to subordinate his claim to the rights of other creditors and that the assets of the partnership included only named physical assets but that the value of contingent claims against prime contractors, especially Curtiss-Wright Company, was

nonexistent; (6) that the receiver, on June 28, 1943, purported to sell all of the assets of the partnership to satisfy expenses of administration, but that the sale was made upon an inadequate notice as a matter of law, that the sale was made to the agent, partner or joint adventurer of Harrison, one D. A. Clem, for $8,450, which sum was paid to the receiver by tendering receiver's certificates originally issued to Harrison, that the Furnace Company did not know the exact transaction between Clem and Harrison but alleged that Clem received a Ford coupé from Harrison in return for which Clem purportedly purchased the remaining assets of United Parts, and that because of the representations made by Mayer and the fraudulent manner in which the assets, particularly the work in progress, were concealed in the pleadings filed in the action, the Furnace Company was unable to determine what assets, if any, were sold to Clem other than the machinery, office equipment and materials listed in the receiver's inventory filed on June 29, 1943; (7) that the Furnace Company recently learned that among the assets allegedly sold to Clem under date of August 3, 1943 (evidently this date is in error and July 2, 1943, was intended), was a valid claim against the Curtiss-Wright Company for approximately $30,000 arising from the termination of the subcontract of United Parts with Curtiss-Wright Company and that the claim was being pressed by Harrison; (8) that the receiver did not file a complete inventory of all the assets of United Parts and therefore could not have sold the claim against Curtiss-Wright, but that if the sale was made it was a fraud upon the other creditors and the court; (9) that the files disclose that the Union National Bank had been assigned invoices of Curtiss-Wright Company prior to the receivership totaling more than $17,000 to cover a balance of $12,377.26 due the bank at the time the receivership was instituted, that at an undisclosed date the bank assigned the indebtedness with the invoices to Harrison, but the records did not disclose that the bank or Harrison ever accounted to the receiver for amounts received from Curtiss-Wright and there should be $2,331.62 more in the hands of the bank or Harrison from the Curtiss-Wright invoices and a further sum of $1,648 from Glen Martin Company invoices, and the bank or Harrison should be made to account to the court for the sum of $3,979.62 held by them but properly belonging to the custody of the court; (10) that the bank was allowed to perfect its claim against the partnership on June 28,

1943, in the sum of $12,377.26, that the claim was paid either at the time it was allowed or since then and the claim of the bank against the partnership should be stricken as it constitues a fraud upon the remaining creditors.

The exhibits attached to the above petition and referred to in No. 5 above are two letters. One dated February 24, 1943, and signed June Harrison Mayer was addressed to creditors of United Parts and stated that the writer had purchased the interest of Probst but that the receiver had not been dismissed. Mention was made that a large pay roll had been suddenly built up in endeavoring to perform contracts with Curtiss-Wright. The letter sought assistance of the creditors in working out matters so that claims might be paid, reviewed past history and stated that she expected to make progress and Curtiss-Wright was coöperating. The part particularly of interest is the following: "United Parts owes my father personally $15,000 for cash advanced, which he is subordinating to claims of all other common creditors who will work with me to get all debts paid. . . ." The other letter was dated March 8, 1943, was addressed to the creditors of United Parts and was signed by an attorney for Mrs. Mayer. The letter stated that the recipient would probably receive a notice that Probst had filed proceedings in bankruptcy in the federal court but that it did not affect United Parts as Mrs. Mayer had purchased his interest. After stating Mrs. Mayer was working with the receiver to pay creditors and that she had drawn no pay since January 15, the letter continued that it was the plan to dispose of certain material and equipment and to continue making tanks for Curtiss-Wright, and that all proceeds from sales were being kept in a separate fund by the receiver, and "After receiver's expenses are paid, they will be applied pro rata on general accounts, except that W. B. Harrison, who advanced $15,000 to the company previous to the receivership, has specified that all creditors who coöperate with the Receiver, Mrs. Mayer and Curtiss-Wright in the program to pay in full as soon as possible, are to be paid before anything is applied on his said $15,000 claim." Other parts of the letter are not of particular importance.

As previously stated, Mr. Harrison and Mrs. Mayer filed separate demurrers to the petition, but before they were ruled upon Harrison and the Furnace Company entered into a stipulation of facts which we summarize: (a) All property received by Clem at

the receiver's sale held July 1, 1943, has since been wholly transferred and conveyed to Harrison; (b) relying on the transfer Harrison entered into negotiations with Curtiss-Wright for settlement of terminated purchase orders for work and supplies from United Parts, and agreement was made that Curtiss-Wright owed $29,-406.89; and (c) that Curtiss-Wright paid Harrison $25,000 and $4,406.89 is owing. It was further stipulated that the sum agreed upon was the true and correct amount due and the parties to the stipulation ratified the negotiations and the amount of the settlement. It was further stipulated the parties would consent to an order which the court might make that the $4,406.89 might be paid into court by Curtiss-Wright, to await further orders of the court, and if such payment were made Curtiss-Wright may by such orders be discharged of all liability to United Parts, its owners, receivers, trustees, assigns, creditors or claimants. If such an order was made it is not shown in the record as abstracted.

At the time the demurrer was heard the trial court heard evidence to supply the record to show that notice of the receiver's sale was published in the Wichita Eagle and a copy mailed to creditors. It found such notice was published and sent and further found that confirmation of the sale cured defects, if any, in the notice to creditors. It also overruled the separate demurrers of Harrison and Mayer and the appeals previously mentioned followed.

Although the Furnace Company, in support of the trial court's ruling, directs our attention to various authorities dealing with procedure, we shall not discuss them for it is conceded the petition was properly filed in an attempt to vacate the judgment of July 2, 1943, under G. S. 1935, 60-3007, *Fourth,* which provides the district court may vacate its judgment after the term at which it was made "For fraud, practiced by the successful party, in obtaining the judgment or order." Under G. S. 1935, 60-3012 the court must first try and decide upon the grounds to vacate the judgment, and the demurrers properly raised the question.

Mayer and Harrison contend their demurrers should have been sustained for the reasons that there was a failure to plead any facts constituting fraud; that if any fraud was pleaded it was intrinsic and not extrinsic, and not sufficient, and also that the fraud, if any, was not by the successful party. In answer the Furnace Company contends the facts pleaded constitute fraud; that in the circumstances of this case it is immaterial whether the fraud was intrinsic

or extrinsic, and that Mayer and Harrison were the successful parties.

Although not in the order presented we take up the question as to who was the successful party. This action started as one for dissolution of a partnership and at its commencement Mayer and Probst were the only parties. Sometime after the receiver was appointed Mayer and Probst settled their immediate difficulties, but by order of court the receivership continued for the benefit of creditors and Harrison filed his intervening petition and established his claim, as did the Furnace Company and other creditors. The nature of the action had been changed. Harrison and others had come into it, and Harrison or any other intervenor may not say he could not have been a successful party under the above statute, and therefore could not have obtained a judgment by fraud of the successful party. Whether he did so obtain a judgment depends on the allegations of the petition to vacate the judgment, and we proceed to examine them.

Preliminary to that examination it is to be noted that no motions were directed against any part of the petition. We bear in mind the rule that when tested by a demurrer, the allegations of the petition are to be taken as true and the pleader is entitled to all favorable inferences that may be drawn from the facts pleaded. The allegations of the petition have been set forth in detail, and the references hereafter made are to be considered in connection with what has been previously stated. Although there is some overlapping, we shall first consider the allegations of fraud made against Mrs. Mayer, and then the allegations against Harrison.

Insofar as Mrs. Mayer is concerned it is charged that she had charge of the books of United Parts and was conversant with its financial affairs; that United Parts had a contract with Curtiss-Wright and continued work thereon after appointment of the receiver; that the books of account kept by United Parts were adequate to show the value of work in progress; that Mrs. Mayer failed to advise the receiver of that fact and led the court and receiver to believe the value of the Curtiss-Wright contract was nonexistent. The only other charge against Mrs. Mayer is that referred to in paragraph 5 of the petition that she conspired with her father, Harrison, to lull other creditors into a false security and to believe Harrison was going to subordinate his claim to that of other creditors as shown by two letters. Those letters have been

partially quoted above. One was written by Mrs. Mayer, the other by her attorney. Both were dated before the Furnace Company intervened and filed its claim. In each letter the statement that Harrison's claim would be subordinated was coupled with coöperation of other creditors. The Harrison claim, according to the second letter, dated March 8, 1943, was for $15,000 advanced prior to the receivership. There is no allegation the Harrison claim was not subordinated nor that it was paid in any manner. The record as abstracted shows that Harrison proved a claim for $15,094.60 for moneys advanced for pay roll, and it further shows that the receiver borrowed on certificates and notes the sum of $10,009.05. In the petition in question it is alleged Harrison advanced the money to the receiver. The record discloses this amount, and possibly some accounts payable if he held the accounts, is all that was paid by the receiver. The petition alleges that the two letters referred to led the creditors to believe the value of the claim against Curtiss-Wright was nonexistent. In addition to the summary of the letters heretofore made, we note the letter of February 24, 1943, states Mrs. Mayer was making parts for Curtiss-Wright and they were coöperating with her, and the letter of her attorney dated March 8, 1943, also makes specific reference to the Curtiss-Wright matter. These letters do not in any manner lead anyone to believe the value of the Curtiss-Wright contract was nonexistent —in fact they indicate but do not express that the contract had a value. The petitioner, by its pleading, bases its charge of connivance and conspiracy existing between Mayer and Harrison solely on the two letters, neither of which Harrison wrote and neither of which sustain the charge made. It may be noted there is no allegation that Mrs. Mayer was successful in anything connected with the receivership. She obtained no judgment in her favor and a number of judgments were rendered against her. It was in her interest that the partnership assets sell for the highest possible figure in order to diminish or extinguish her own liability. She was not the purchaser at the receiver's sale nor is there any allegation she participated in the sale or profited in any manner from it.

Insofar as Harrison is concerned, we need not repeat what has previously been said about his conniving and conspiring with Mrs. Mayer. The petition further charges that when the receiver held his sale on June 28, 1943, it was made upon inadequate notice as a matter of law, an allegation which charges no one with fraud, and

that the sale was made to Clem, who was an agent, partner or joint adventurer with Harrison, and that the consideration was paid with receiver's certificates originally issued to Harrison who gave Clem a Ford coupé to bid; that because of the representations of Mrs. Mayer and the concealment of the work in progress in the pleadings, the Furnace Company was unable to determine what assets were sold to Clem; that it had learned that among the assets was the claim against Curtiss-Wright later settled for $30,000, as previously set out. It is charged the entire assets were sold for $8,450, but there is no allegation as to value of machinery or equipment as distinguished from the value of the contingent assets included in the sale. Although not pleaded in the petition, we are advised by the stipulation that Clem transferred, assigned and conveyed to Harrison all assets purchased at the sale, as previously set forth.

It will be noted there is no allegation that Harrison concealed anything concerning the receivership nor that he conspired with Mrs. Mayer to conceal anything. There is no allegation that he possessed any knowledge concerning value or extent of the assets sold by the receiver that was not available to any party to the action, including the Furnace Company. There is no allegation that he had anything to do with procuring the order for the receiver to sell the assets (on the contrary the record discloses only that the receiver moved for an order to sell), nor that he moved for confirmation of the sale. There is no allegation that he, nor anyone else, made any representations of any kind as to extent or value of the assets sold or prevented any person from bidding at the sale. To recapitulate, Harrison is charged with conspiring with Mrs. Mayer to lull creditors into a false sense of security, which matter has been adequately discussed, and in having Clem purchase the property at the receiver's sale. Although the pleader charges that it was unable to determine what assets were sold because of the representations of Mrs. Mayer and the "fraudulent" manner in which the assets were sold, no facts are pleaded to show how or in what manner Mrs. Mayer's letter to creditors, or Clem's purchase for Harrison, prevented a sale to anyone who bid the highest price for the articles to be sold.

We have not overlooked allegations tending to show that the receiver may not have been diligent in all particulars and that the inventory filed by him did not disclose in more detail the extent

and value of the claim against Curtiss-Wright, but he is not charged with fraudulent conduct in any particular nor is it charged that Mayer, Harrison, or anyone else, colluded with the receiver in connection with any matter and in any manner. Perhaps the observation is not of consequence, but many of the matters complained of could have been discovered at or before the sale by the exercise of diligence. Complaint is made that the notice of sale was inadequate as a matter of law but if the interval between the order of sale and the time the sale was held was too short, or if the notice did not comply with the order of sale or any applicable statute, the error, if any, was then known to exist and if not corrected on timely objection, an appeal should have been perfected. So far as the record before us discloses, there were no objections to the order of sale being made nor to anything that transpired in carrying it out, until the present petition was filed over a year after the sale had been confirmed.

It is plainly inferable from the petition to vacate the sale that no complaint would have been lodged had it not developed that the contingent asset consisting of the claim against Curtiss-Wright was more valuable than it was thought to be at the time of sale when there remained work to be done on the contract. Although the briefs mention this work, the petition is silent thereon. While cases may be found that mere inadequacy of price will justify the court in setting aside a sale, ordinarily that will not be done where the sale is held and confirmed without objection, and the objection comes late. There is no attempt on the part of the Furnace Company to show it acted diligently—in fact the converse appears.

The allegations of the petition to vacate, pertaining to the allowance of the claim of the Union National Bank, have not been overlooked but seem not to be relied on by either party. There is no showing that after the petition to vacate was filed, any summons was served on the bank, or that it made any appearance. What is now sought, in effect, is to relitigate the claim of the bank, which the record before us fails to disclose was paid at any time, either from proceeds of the receiver's sale or otherwise. This particular phase will not be further discussed.

In our opinion, the petition to set aside the sale does not state facts sufficient to warrant the relief sought.

In view of our conclusion it is not necessary that we discuss the Furnace Company's cross-appeal further than to say that while the

court's finding the notice of sale was properly published and mailed to creditors was probably prematurely made, as only a demurrer was before it for consideration, it does not appear to have been prejudicial to the Furnace Company.

The judgment of the trial court overruling the demurrer to the petition is reversed and set aside and the cause remanded with instructions to the trial court to sustain the demurrer.

Burch, J., not participating.